ORDER GRANTING DEFENDANT’S MOTION TO DISMISS
 

 GOLD, District Judge.
 

 THIS CAUSE is before the court upon Defendant’s Motion to Dismiss for Improper Venue and for Failure to State a Claim [D.E. 25], filed on March 9, 2000. Plaintiff filed a Response [D.E. 32] on April 24, 2000, and defendant filed a Reply [D.E. 38] on May 10, 2000. . Along with their reply, defendant submitted a Motion to Strike Affidavit of Plaintiffs Attorney Charles Lipcon [D.E. 37]. On July 31, 2000, the court requested additional docu
 
 *1305
 
 ments from the parties,
 
 [1]
 
 which were submitted on August 7, 2000. Oral argument upon the motion to dismiss was heard by the court on October 6, 2000. After oral argument, the court requested and received additional memoranda of law from the parties.
 
 [2]
 
 The matter is now ripe for decision.
 

 The Complaint in this action was originally filed on November 22, 1999, with an Amended Class Action Complaint filed on February 18, 2000 [D.E. 8], Plaintiffs Amended Complaint sets forth four causes of action, as follows: Count I, breach of contract; Count II, breach of defendant’s policy of medical reimbursement; Count III,
 
 [3]
 
 breach of collective bargaining agreement; and Count IV, unjust enrichment and accounting. Jurisdiction of this court is invoked pursuant to the court’s admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h).
 

 Defendant moves for entry of an order dismissing this action under Federal Rules of Civil Procedure 12(b)(3) (improper venue) and 12(b)(6) (failure to state a claim upon which relief can be granted). Having carefully considered the arguments of the parties, the applicable case law, and the record as a whole, the court finds that defendant’s motion should be granted.
 

 II. Factual and Procedural Background
 

 For purposes of this order, the facts and inferences raised in the Complaint are assumed to be true and are viewed in the light most favorable to the plaintiffs. Those facts are set forth as follows.
 

 Defendant Royal Caribbean Cruises Ltd. (“Royal Caribbean”) is a foreign corporation organized and existing under the laws of Liberia, and Plaintiff Ricky Webster (“Webster”) is a Nicaraguan citizen. During 1997, Webster was employed by Royal Caribbean as a seaman and was a member of one or more of defendant’s vessel’s crew. [Complaint ¶ 8 (paragraphs in the Complaint will hereinafter be referred to as “¶ —”) ]. Defendant required, as a term or condition of employment, that plaintiff pass a medical exam prior to beginning work. [¶ 5]. These exams are supposed to be paid for by Royal Caribbean. [¶ 5]. However, on or about July 21, 1997, Webster paid $200 (local currency)
 
 [4]
 
 to the agent for Royal Caribbean for his required medical exam, which has not been reimbursed. [¶ 9].
 

 Plaintiff alleges that defendant’s failure to reimburse the cost of his pre-employment medical examination breached the contract of employment and the incorporated terms and conditions of employment, violated the collective bargaining agreement between Royal Caribbean and the Norwegian Seaman’s Union, and breached Royal Caribbean’s policy of medical reimbursement. Plaintiff brought this action
 
 *1306
 
 as a class action on behalf of all crew members employed by defendant who were not reimbursed their medical examination expenses as required by their contract of employment and/or collective bargaining agreement and /or defendant’s medical reimbursement policy. [¶ 20].
 

 III. Standard of Review
 

 Defendant brought the motion to dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).
 

 Motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R.Civ.P. 12(b)(3) as motions to dismiss for improper venue.
 
 See Lipcon v. Underwriters at Lloyd’s, London,
 
 148 F.3d 1285, 1290 (11th Cir.1998). Since Rule 12 plainly permits a party to make by motion certain enumerated defenses “in law or fact,” the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact.
 
 See Thomas v. Rehabilitation Serv. of Columbus, Inc.,
 
 45 F.Supp.2d 1375, 1376 (M.D.Ga.1999). Of course, when a party moves for dismissal for failure to state a claim under Rule 12(b)(6), the rule specifically provides that if the court considers matters outside the pleadings, the court is required to convert the motion to one for summary judgment under Rule 56 and serve notice upon the parties so that they may present all material made pertinent to such a motion. For defenses raised under subsections (1) through (5), however, the court may consider matters outside the pleadings, and often must do so, since without aid of such outside materials the court would be unable to discern the actual basis, in fact, of a party’s challenge to the bare allegation in the complaint that venue is proper in this court.
 
 Transmirra Prods. Corp. v. Fourco Glass Co.,
 
 246 F.2d 538-39 (2nd Cir.1957) (resolving motion to dismiss because of improper venue “in the usual manner on affidavits, here supplemented by answers to interrogatories, and a deposition from one of the defendant’s employees in the district, rather than by a full trial”);
 
 Exchange Nat’l Bank of Chicago v. Touche Ross & Co.,
 
 544 F.2d 1126, 1130-31 (2nd Cir.1976) (explaining use of outside materials to resolve motion to dismiss under Rule 12(b)(1));
 
 see generally,
 
 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (2nd ed.1990).
 

 Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal of a claim is appropriate “only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.”
 
 Blackston v. Alabama,
 
 30 F.3d 117, 120 (11th Cir.1994)
 
 (quoting Hishon v. King & Spalding,
 
 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). On a motion to dismiss, the Court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the non-moving party.
 
 See Hunnings v. Texaco, Inc.,
 
 29 F.3d 1480, 1483 (11th Cir. 1994). Rule 12(b)(6) is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and the attachments thereto.
 
 Brooks v. Blue Cross and Blue Shield of Fla., Inc.,
 
 116 F.3d 1364, 1368 (11th Cir.1997). Moreover, a complaint should not be dismissed for failure to state a claim upon which relief can be granted “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.”
 
 M/V Sea Lion v. v. Reyes,
 
 23 F.3d 345, 347 (11th Cir.1994) (citation omitted).
 

 IV. Discussion
 

 A. Order of Proceedings
 

 .As a preliminary matter, the court addresses the order in which the motion to dismiss and a pending, but later filed, motion for class certification should be determined. Plaintiff filed a motion for class certification on May 15, 2000, five days
 
 *1307
 
 after the motion to dismiss had initially become ripe. The motion for class certification was briefed by the parties and became ripe on June 22, 2000. As noted in the factual and procedural history section of this order, plaintiff brought this action as a class action on behalf of all crew members employed by defendant who were not reimbursed their medical examination expenses as required by their contract of employment and/or collective bargaining agreement and /or defendant’s medical reimbursement policy.
 

 Federal Rule of Civil Procedure 23(c)(1) provides that the court should determine by order “[a]s soon as practicable after the commencement of an action brought as a class action” whether the class action shall be maintained. The vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification.
 
 Thornton v. Mercantile Stores Co., Inc.,
 
 13 F.Supp.2d 1282, 1289 (M.D.Ala.1998) (citing
 
 Floyd v. Bowen,
 
 833 F.2d 529, 534-35 (5th Cir. 1987)) (additional citations omitted). In
 
 Thornton,
 
 the district court determined that the facts of the case warranted consideration of a pending motion for summary judgment prior to determination of a previously filed motion for class certification. The court noted that ruling on a dispositive motion prior to addressing class certification issues may be appropriate where there is sufficient doubt regarding the likelihood of success on the merits of a plaintiffs claims, where inefficiency would result, or where neither plaintiffs nor members of the putative class would be prejudiced.
 
 Thornton,
 
 13 F.Supp.2d at 1289 (citations omitted).
 

 The circumstances of this case warrant consideration of the merits of the pending motion to dismiss prior to consideration of the motion for class certification. In terms of timing, the motion for class certification was not filed until after the motion to dismiss had become ripe. Regarding efficiency and sufficient doubt as to the merits of plaintiffs claims, the court notes that the motion to dismiss may be dispositive, thereby rendering the motion for class certification moot.
 
 See Tapken v. Brown,
 
 1992 WL 178984 at *9 (S.D.Fla. 1992). Furthermore, the nature of the motion to dismiss, which is based on a contractual forum selection clause, involves consideration of the potential class nature of the complaint, thus alleviating any potential prejudice to the plaintiff (the defendant has requested consideration of the motion to dismiss prior to consideration of the motion for class certification,
 
 see
 
 D.E. 53). According, the court turns to the merits of the motion to dismiss.
 

 B. Dismissal of Counts I and III for Improper Venue
 

 In Count I, breach of contract, and Count III, breach of collective bargaining agreement, plaintiff alleges that Royal Caribbean’s refusal to reimburse plaintiff for his pre-employment medical examination violated the contract of employment, the incorporated terms and conditions of employment, and the collective bargaining agreement (“CBA”) between Royal Caribbean and the Norwegian Seaman’s Union. Defendant argues that dismissal of both counts for improper venue is warranted because of a forum selection clause contained within the CBA. In response, plaintiff argues that the court should deny the motion because the forum selection clause is unenforceable as both a matter of law and public policy. Upon review of the applicable law and the facts of this case, the court finds that the forum selection clause is enforceable, and that Counts I and III should be dismissed.
 

 Forum selection clauses in admiralty cases are presumptively valid and enforceable.
 
 M/S Bremen v. Zapata OffShore Co.,
 
 407 U.S. 1, 11, 92 S.Ct. 1907, 1913-14, 32 L.Ed.2d 513 (1972). To overcome the presumption of enforceability, the party challenging the clause must make a strong showing that the clause is unreasonable under the circumstances.
 
 M/S Bremen,
 
 407 U.S. at 15, 92 S.Ct. at
 
 *1308
 
 1916;
 
 Carnival Cruise Lines, Inc. v. Shute,
 
 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991);
 
 see also Stewart Organization v. Ricoh Corp.,
 
 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring) (“[A] valid forum selection clause is given controlling weight in all but the most exceptional cases.”).
 

 In
 
 The Bremen,
 
 the Supreme Court analyzed a forum selection clause in a contract between two companies of different nations contemplating a costly maritime transaction. In finding that the forum clause was valid, the Court did not define precisely the circumstances that would make it unreasonable for a court to enforce such a clause, preferring to note that the clause was a vital part of the agreement, that the parties were from different countries and were sophisticated business entities, and that the clause was freely negotiated.
 
 M/S Bremen,
 
 407 U.S. at 17, 92 S.Ct. at 1917. More recently, in
 
 Carnival Cruise Lines, Inc. v. Shute,
 
 the Supreme Court looked at a situation involving a tort action by a cruise ship passenger. It was not a case involving negotiations between sophisticated business entities. Nevertheless, the Court found that even though the passenger did not and could not bargain for the forum selection clause due to a lack of bargaining power, forum selection clauses in routine contracts of passage are enforceable if they are reasonable.
 
 Shute,
 
 499 U.S. at 593, 111 S.Ct. at 1527. The Court found the clause in question to be reasonable because it limited the cruise line’s exposure to suits in multiple forums, eliminated confusion about where to file suit against the cruise line, and tended to reduce ticket prices.
 
 Id.
 
 at 593-94, 111 S.Ct. at 1527-28.
 

 In this case, the Employment Agreement signed by plaintiff and defendant includes a provision stipulating that the employee has received a copy of the terms and conditions of employment, which he understands and accepts.
 
 See
 
 D.E. 56, Ex. 1. The terms and conditions of employment form states that the employee acknowledges receiving a copy of the Collective Bargaining Agreement, and also includes a paragraph entitled Medical Examination, which states in relevant part:
 

 Employment under this contract is expressly conditioned upon the employee taking, and passing a medical examination prior to beginning employment, and periodic physical exams thereafter, under standards prescribed by the Company. The Company shall choose the examining physician or medical facility to conduct such medical examination(s) which the Company shall pay for.
 

 D.E. 56, Ex. 3. Furthermore, within the Collective Bargaining Agreement itself, Article 1, paragraph 1 states that “[t]he Employee shall be reimbursed for authenticated outlays for the medical certificate.” D.E. 56, Ex. 2. Article 13 of the CBA states that the Agreement is subject to Norwegian law and the jurisdiction of the courts in Norway, and that “[Ilegal action against [Royal Caribbean] concerning an Employee’s service on board the vessel, may, however, be brought either in the courts of Norway or in the courts of the country where the employee is domiciled, but in no other country.”
 
 Id.
 
 Plaintiffs Count I and Count III both seek to enforce the CBA’s reimbursement provision, and the forum selection clause analysis therefore applies to both counts.
 

 As noted by the Fifth Circuit in
 
 Marine-chance Shipping, Ltd. v. Sebastian,
 
 143 F.3d 216 (5th Cir.1998), there are many similarities between seaman contracts and the contract of passage at issue in
 
 Shute.
 
 For example, the contracts of employment for seaman aboard international vessels that travel to foreign ports are routine; the seaman individually do not have much bargaining power; and the use of forum selection and choice of law provisions brings predictability and uniformity to the vessels exposure to suits and informs the seaman of where causes of action can be maintained.
 
 Marinechance,
 
 143 F.3d at
 
 *1309
 
 221. Furthermore, in
 
 Marinechance,
 
 the Court noted that the forum selection clause was imposed by an arm of the Philippine government, and found that this intervention shifted the balance of power slightly in favor of the employee in much the same way that a labor union or legislative enactment of minimum work standards increases the level of protection of employees in the United States.
 
 Id.
 
 Similarly, in this case the plaintiff was represented by a union that negotiated the CBA on his behalf, thus shifting the balance of power between the parties and reducing the likelihood of unfair bargaining.
 
 See Gazis v. John S. Latsis (USA) Inc.,
 
 729 F.Supp. 979, 990 (S.D.N.Y.1990).
 

 Plaintiff has argued that the forum selection clause should not be enforced because Webster was not a member of the Norwegian seaman’s union. Plaintiff refers to transcript testimony from
 
 Gheor-ghita v. Royal Caribbean Cruises, Ltd.,
 
 Case NO. 98-2156-Civ-Hoeveler, as support to show that seaman like Webster could not vote in union elections, could not elect union representatives, and could not vote on the terms of the collective bargaining agreement. What plaintiff fails to point out to the court is that Judge Hoe-veler found that the plaintiff in
 
 Gheorghi-ta,
 
 who Webster has apparently tried to argue was in a comparable employment situation, should be held to the terms of the Collective Bargaining Agreement between Royal Caribbean and the Norwegian Seamen’s Union because she failed to demonstrate that the CBA was a sham or ruse.
 
 See Gheorghita,
 
 Findings of Fact and Conclusions of Law, February 10, 2000, p. 13. Moreover, Judge Hoeveler noted that additional support for enforcing the agreement could be found in the fact that the plaintiff in that case clearly had constructive notice of the terms of the agreement, having (a) signed a Sign-On Agreement indicating that she had received a copy of the terms and conditions of employment and (b) signed a form entitled Specific Information Pertaining to Certain Terms and Conditions of Employment, which indicates that the employee acknowledges having received a copy of the CBA. These are the exact same documents that Webster signed and which the parties submitted in D.E. 56 as exhibits 1 and 3. There can likewise be no argument from Webster that he did not have constructive, if not actual, notice of the CBA.
 

 Moreover, in this case Webster seeks to enforce Article 1 of the CBA on one hand, while simultaneously trying to disavow the provisions of Article 13 of the same agreement on the other hand by arguing that the agreement is unfair and a violation of public policy. In all of the cases cited by Webster for the proposition that courts are reluctant to enforce forum selection clauses because of a disparity in bargaining power, plaintiffs were attempting to enforce maritime tort or personal injury claims that arose independent of the seamen’s employment contracts.
 
 See, e.g., Hellenic Lines, Ltd. v. Rhoditis,
 
 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970);
 
 Sablic v. Armada Shipping Aps.,
 
 973 F.Supp. 745 (S.D.Tex.1997);
 
 Bodzai v. Arctic Fjord, Inc.,
 
 990 P.2d 616 (Alaska 1999).
 
 [5]
 
 As one of the cases cited by plaintiff clearly implied, where the claims arise under and are dependent on the very contract in which the forum selection clause exists, the forum selection clause should be enforced.
 
 Bodzai,
 
 990 P.2d at 618.
 
 [6]
 
 Web
 
 *1310
 
 ster cannot be permitted to pick and choose the provisions of the CBA he wishes to enforce and those he wishes to ignore when bringing a lawsuit for damages under the CBA.
 

 Even the supplemental authority filed by plaintiff on October 5, 2000 [D.E. 62] supports the argument that there is and should be a difference in the enforcement of forum selection clauses in seaman actions brought under tort and contract theories. The article submitted by plaintiff, Paul S. Edelman’s “Some Interesting Developments in Forum Selection Clauses,”
 
 New York Law Journal,
 
 September 30, 1999, criticized the Louisiana Supreme Court’s decision to uphold a forum selection clause between a Philippine seaman and his employer in a case involving personal injuries while working on board the vessel in the straits of Florida. Edelman notes that the Philippine National Labor Relations Commission (NLRC) refused to take jurisdiction over the case and sent it back to Louisiana under a
 
 forum non con-veniens
 
 analysis, and he quotes the NLRC opinion as follows:
 

 Furthermore, the Office is not the appropriate forum for this case. It should be noted that the complainants are not asking here for contractual benefits but rather damages arising from tort.... It would have been different if the claim is totally for contractual benefits, which would not require the testimonies of the United States based witnesses.
 

 Edelman, “Some Interesting Developments in Forum Selection Clauses,” p. 9. In this case, the majority of the relevant witnesses are in Nicaragua, where plaintiff resides and where he is authorized under the CBA to bring suit.
 

 Webster also argues that enforcement of the forum selection clause would pose a serious inconvenience for Webster and would violate public policy because he would be required to travel to a remote location to enforce his rights and would not be able to bring a class action in the alternative forums. To have a forum selection clause set aside due to serious inconvenience to one of the parties, the party seeking to set aside the clause must satisfy a “heavy burden of proof.”
 
 See Shute,
 
 499 U.S. at 595, 111 S.Ct. at 1528.
 

 Webster cannot satisfy that burden in this case. First, Webster has submitted the affidavit of his lawyer to show that it would be prohibitively expensive for Webster to fly to Norway to prosecute this case.
 
 [7]
 
 Even assuming these facts are true, the forum selection clause permits Webster to bring suit in his home country of Nicaragua or in Norway. Webster’s argument ignores the possibility of bringing the suit in Nicaragua, where Webster and the witnesses concerning his pre-employment physical reside. Webster has not'offered any evidence or explanation as to why bringing the case in Florida would constitute less of a burden than bringing the suit in Nicaragua.
 

 Second, Webster argues that enforcement of the clause is unreasonable, and a violation of public policy, because neither Norway nor Nicaragua permit class actions and, given the nature of the claim, a class action is the only practicable way for the aggrieved class of employees who were denied reimbursement of medical expenses to enforce them alleged contractual rights. Both parties agree that class actions are not permitted in Norway, but there is dispute over the legal remedies available to plaintiff in Nicaragua. Plaintiff has submitted an affidavit from Renaldy J. Gutierrez, Esq., a Nicaraguan attorney, who states that Nicaraguan law does not provide for class actions except in an extremely limited number of statutorily prescribed
 
 *1311
 
 circumstances, none of which applies to the situation here.
 
 See
 
 D.E. 65, Ex. A. Defendant has submitted an affidavit from Lean-dro Marin-Abaunza, a Nicaraguan attorney and former Nicaraguan government official, who states that while Nicaraguan law does not recognize “class actions” as those words are recognized in the United States, Nicaraguan law does permit numerous employees to join together and maintain a common cause of action against their mutual employer provided that each individual employee or group of employees that is a party to such action is identified by name.
 
 See
 
 D.E. 66, Ex. B. Alternatively, suit could be brought by the union on behalf of its members in a Nicaraguan court.
 
 Id.
 
 The court finds that affidavit submitted by the plaintiff does not contradict the affidavit submitted by the defendant, and that alternative means of collective action and of bringing this case are available in Nicaragua. In light of these facts, and the fact that Webster had at least constructive notice of the forum selection clause, Webster has not satisfied the heavy burden of proof required to set aside the clause on the ground of inconvenience and violation of public policy.
 

 Finally, there is no evidence in this case that the forum selection clause contained in the CBA was set up as a means of discouraging plaintiffs from pursuing their claims. Such a suggestion is belied by the fact that plaintiff is given a choice of bringing the suit in his home country or in Norway. Similarly, there is no evidence in this case that the forum selection clause was reached by fraud or overreaching.
 

 Plaintiff seeks to have the contract clause declared unreasonable and unenforceable largely because plaintiff and the class he seeks to represent are seaman, and thus wards of admiralty and deserving of special protection of the court.
 
 See, e.g. Socony-Vacuum Oil Co., Inc. v. Smith,
 
 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939). As noted in
 
 Socony-Vacuum,
 
 special care is given in the treatment of seaman because:
 

 The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to landsmen. His complaints to superior officers of unsafe working conditions not infrequently provoke harsh treatment. He cannot leave the vessel while at sea. Abandonment of it on port before his discharge, to avoid unnecessary dangers of employment, exposes him to the risk of loss of pay and to the penalties for desertion. In the performance of his duty he is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action.
 

 Socony-Vacuum,
 
 305 U.S. at 430-31, 59 S.Ct. at 266. None of the policy concerns expressed in
 
 Socony-Vacuum
 
 are present in this case. All indications are that the CBA was bargained for on plaintiffs behalf by a union and that the forum selection clause’s terms are not unreasonable. Moreover, the complaint is to enforce the reimbursement clause of the CBA, not to protect an injured seaman who could not protect himself at sea.
 
 [8]
 

 Accordingly, for the reasons set forth above, Counts I and III must be dismissed without prejudice for improper venue.
 

 
 *1312
 
 C. Dismissal of Count II for Failure to State a Claim
 

 Defendant argues that Count II of the Amended Complaint, alleging breach of defendant’s policy of medical reimbursement, should be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted because the defendant’s unilateral policy statements do not give rise to enforceable rights. Plaintiff did not present any arguments in response, effectively conceding dismissal on this point. Nevertheless, the court has considered the merits of defendant’s argument, and finds that Count II should be dismissed.
 

 Under Florida law, policy statements by an employer do not give rise to enforceable contract rights of employees without the parties’ explicit mutual agreement.
 
 See Caster v. Hennessey,
 
 727 F.2d 1075, 1077 (11th Cir.1984);
 
 McConnell v. Eastern Air Lines, Inc.,
 
 499 So.2d 68, 69 (Fla. 3d DCA 1986). Plaintiff in this ease has attached a “New Hire Checklist” to the Complaint, in which Webster marked off that he had been informed about the medical reimbursement policy prior to departing from his home. Complaint, Ex. 3. Such a policy, whether stated orally or given to the plaintiff in handbook form, does not create an enforceable and independent contract right against the defendant. Moreover, the court specifically requested that the parties submit a copy of the medical reimbursement policy but was only provided with another copy of the New Hire Checklist. Accordingly, Count II must be dismissed.
 

 D. Dismissal of Count IV for Failure to State a Claim
 

 Defendant argues that plaintiffs claims in Count IV, for unjust enrichment and an accounting, should be dismissed for failure to state a claim upon which relief can be granted because unjust enrichment is an equitable remedy which does not apply where the parties have entered into a contract and the parties have an adequate remedy at law, and the economic loss rule bars the unjust enrichment claim. Plaintiff has responded very briefly by stating that a party may plead claims in the alternative, and that the economic loss rule does not apply to claims like unjust enrichment that sound in quasi-contract. In support, plaintiff has cited the court to one case within this district,
 
 ThunderWave, Inc. v. Carnival Corp.,
 
 954 F.Supp. 1562 (S.D.Fla.1997).
 

 Plaintiffs reliance on
 
 Thunder-Wave
 
 is misguided. In
 
 ThunderWave,
 
 the court permitted the plaintiff’ to simultaneously allege the existence of an oral contract and to seek equitable relief under the theory of unjust enrichment.
 
 ThunderWave,
 
 954 F.Supp. at 1566. However, unlike the situation in
 
 ThunderWave,
 
 in which the defendant denied the existence of an express contract, the defendant in this case has admitted to the existence of an express contract between the parties and has submitted to the court a copy of the “Sign-On Employment Agreement.” As noted by Judge Moreno in
 
 Thunder-Wave,
 
 “upon a showing that an express contract exists, the quasi-contract claim fails.”
 
 Id.
 
 Therefore,
 
 ThunderWave
 
 is plainly distinguishable on its face, and actually works to the disadvantage of the plaintiff. More recent Florida appellate decisions have reinforced the position that quantum meruit damages
 
 [9]
 
 cannot be awarded when an enforceable contract exists.
 
 See Com v. Greco,
 
 694 So.2d 833, 834 (Fla. 2d DCA 1997);
 
 Cross v. Strader Construction Corp.,
 
 768 So.2d 465, 466 (Fla. 2d DCA 2000).
 

 Furthermore, “the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.”
 
 Gary v. D. Agustini & Asociados, S.A.,
 
 865 F.Supp. 818, 827 (S.D.Fla.1994). Plaintiff in this case
 
 *1313
 
 has failed to allege that an adequate remedy at law does not exist, and nothing in the Amended Complaint or arguments of the parties indicates that such a situation exists.
 
 See Nautica International, Inc. v. Intermarine USA, L.P.,
 
 5 F.Supp.2d 1333, 1342 (S.D.Fla.1998). Plaintiffs claim for unjust enrichment must therefore be dismissed. It is unnecessary for the court to reach defendant’s alternative argument that the unjust enrichment claim is barred by the economic loss rule.
 

 Accordingly, it is
 

 ORDERED AND ADJUDGED that Defendant’s Motion to Dismiss for Improper Venue and for Failure to State a Claim [D.E. 25] is GRANTED. It is further
 

 ORDERED AND ADJUDGED that all pending motions not otherwise disposed of by this order are DISMISSED AS MOOT and this case is CLOSED.
 

 [1]
 

 . Specifically, the court’s July 31, 2000 Order requested that the parties jointly submit "full and complete copies of the employment agreement between Webster and Royal Caribbean, the collective bargaining agreement between Royal Caribbean and Norwegian Seamen's Union, the terms and conditions of employment, and the medical reimbursement policy.” The August 7, 2000 submission contains copies of the first three documents, but only has a checklist in which Webster indicated he was "informed about the medical reimbursement policy,” instead of a copy of the actual policy.
 

 [2]
 

 . On October 10, 2000, the court asked the parties to address whether the class action allegations affect the enforceability of the forum selection clause, as well as whether class action relief is available to the plaintiffs in Nicaragua, and if not, what impact that has on the forum selection clause.
 

 [3]
 

 . Plaintiff's Amended Complaint incorrectly numbered the second and third Counts as "Count II.”
 

 [4]
 

 . Plaintiff averred in his Response that his bill for his pre-employment physical amounted to 20 Nicaraguan cordobas, or $1.61. Given the disparity between this statement and the unclear statement in the complaint (setting forth the amount with a $ sign but saying it was in local currency), the court makes no finding as to the actual amount of the bill, other than to note it was apparently at least $1.61 U.S. and no more than $200 U.S.
 

 [5]
 

 . Plaintiff also relies heavily in her brief on
 
 Cuizon v. Kedma Ltd.,
 
 1997 WL 37938 (S.D.N.Y.1997).
 
 Cuizon
 
 is an unpublished opinion from the Southern District of New York that was vacated on December 17, 1998. Accordingly, the
 
 Cuizon
 
 opinion carries no precedential or persuasive weight in this court.
 

 [6]
 

 .
 
 Bodzai
 
 involved a personal injury action brought by a seaman against his employer in Alaska state court.
 
 Bodzai,
 
 990 P.2d at 617-18. The Supreme Court of Alaska found the forum-selection clause in Bodzai’s employment contract to be unenforceable because the personal injury claim did not arise under the terms of the employment contract.
 
 Id.
 
 at 620.
 

 [7]
 

 . Royal Caribbean submitted a motion to strike the affidavit of Charles Lipcon. However, even considering the affidavit, the court finds that plaintiff cannot meet his burden of showing serious inconvenience sufficient to make the forum selection clause unreasonable. Therefore, the court finds it unnecessary to reach the merits of the motion to strike.
 

 [8]
 

 . The court notes that at oral argument, and in the supplemental brief submitted after oral argument, plaintiff argues that the strict construction afforded to seamen’s employment contracts leads to inapplicability of the forum selection clause because the clause, by its very terms, is limited to “legal action against RCCL concerning an employees’s service on board the vessel.” Regardless of the fact that plaintiff's argument regarding special protection to seamen is largely inapplicable to this case, the court finds that an action seeking to enforce the CBA's reimbursement clause for a pre-employment physical that is required in order to serve on board the vessel is sufficiently related to an employee's service on board the vessel to fall within the ambit of the forum selection clause.
 

 [9]
 

 . Quantum meruit is used as an equitable remedy to provide restitution for unjust enrichment. Black's Law Dictionary 1255 (7th Ed. 1999).