**FRED LURIE ASSOCIATES, INC.,
d/b/a Market Footwear f/u/b/o/ St.
Paul Fire and Marine, Plaintiff,**

v.

**GLOBAL ALLIANCE LOGISTICS,
INC., Global Alliance Logistics, (HK)
Limited, CMA–CGM, S.A. and Port of
Miami Terminal Operating Company,
LLC, Defendants.**

No. 05:22881–CIV.

United States District Court,
S.D. Florida.
Miami Division.

June 26, 2006.

**1352**

William Edward Cassidy, Cassidy & Black, Miami, for Fred Lurie Associates, Inc., for use and benefit of St. Paul Fire and Marine dba Market Footwear, plaintiff.

Jonathan Scott Cooper, Blanck & Perry, Jan Michael Kuylenstierna, Fowler White Burnett, Miami, Stephen C. Irick, Jr., Hayden & Milliken, Coral Gables, for Global Alliance Logistics, Inc., Global Alliance Logistics, (HK) Limited, CMA–CGM, S.A., Port of Miami Terminal Operating Company L.L.C., defendants.

### ORDER GRANTING MOTIONS TO DISMISS

MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendant Global Alliance Logistics, (HK) Limited's Motion to Dismiss (D.E. No. 9), filed on *December 19, 2005*, Defendant CMA CGM, S.A.'s Motion to Dismiss for Improper Venue, Enforcing Forum Selection Clause (D.E. No. 11), filed on *January 3, 2006*, and Defendant Global Alliance Logistics, Inc.'s Motion to Dismiss (D.E. No. 14), filed on *January 11, 2006*. In these motions, three of the defendants have moved to dismiss Plaintiff's Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) because of three different forum selection clauses. For the reasons stated below, these motions are granted.

### I. Relevant Factual and Procedural Background

On November 7, 2005, Plaintiff Fred Lurie Associates, Inc. doing business as Market Footwear [1] for the use and benefit

---

**1.** Plaintiff Fred Lurie Associates Inc. doing business as Market Footwear was "the owner,

of St. Paul Fire and Marine [2] ("Lurie") filed suit against four different defendants seeking relief after a shipment of shoes "in the care, custody and control of one or more of the Defendants" was damaged. (D.E. No. 1 at 4). Plaintiff alleges that in October 2004, Defendants, Global Alliance Logistics, Inc., ("Global"),[3] "a non-vessel owning common carrier ... of merchandise-by-water-for-hire," Global Alliance Logistics, (HK) Limited ("Global HK"),[4] also "a non-vessel owning common carrier ... of merchandise-by-water-for-hire," CMA–CGM, S.A. ("CMA–CGM"),[5] "a common ocean carrier for hire and ... the actual ocean carrier for the subject shipment," received a forty-foot container, which held 11,880 pairs of footwear. (D.E. No. 1 at 2–3). Plaintiff also alleges that the footwear was in good condition for ocean transportation from Hong Kong to Miami, Florida. *Id.* at 3. The container arrived in Miami and was discharged from CMA–CGM's vessel around November 8, 2004. *Id.* at 4. From November 8, 2004 until November 30, 2004, Plaintiff alleges that the container was in the possession of either Global, Global HK, CMA–CGM or Defendant Port of Miami Terminal Operating Company, LLC ("Port of Miami"), a corporation engaged in business as a stevedore and marine terminal operator. *Id.* at 3–4. The container was delivered to Plaintiff on November 30, 2004 and when the container was opened at the Plaintiff's premises the shoes were found to have been substantially damaged. *Id.* Plaintiff then filed suit alleging claims for bailment in count I against all Defendants, negligence in count II against all Defendants, and breach of contract in counts III, IV, and V against Defendants Global and Global HK, Defendant CMA–CGM and Defendant Port of Miami respectively. Defendants Global, Global HK and CMA–CGM have all filed motions to dismiss alleging improper venue based on three forum selection clauses.

## II. Legal Standard

 Defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.[6] In considering a motion to dismiss for improper venue, "the court may consider matters outside the pleadings such as affidavit testimony, 'particularly when the motion is predicated upon key issues of fact.'" *Wai v. Rainbow Holdings,* 315 F.Supp.2d 1261, 1268 (S.D.Fla.2004) (quoting *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D.Fla. 2000)). In admiralty cases, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

consignee and insured of the subject ocean cargo shipment." (D.E. No. 1 at 2).

2. St. Paul Fire & Marine Insurance Company was the insurer of the shipment of shoes. (D.E. No. 1 at 3).

3. Plaintiff alleges that Global is a Delaware corporation. (D.E. No. 1 at 3).

4. Plaintiff alleges that Global HK is a "foreign corporation, located in Hong Kong." (D.E. No. 1 at 3).

5. Plaintiff alleges that CMA–CGM is a French corporation. (D.E. No. 1 at 3).

6. The Court notes that Defendant CMA–CGM has also mentioned Rule 12(b)(6) as a ground for dismissal; however, its claims of improper venue are more properly brought pursuant to Rule 12(b)(3). *See Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D.Fla.2000) ("Motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R.Civ.P. 12(b)(3) as motions to dismiss for improper venue.").

*See also Webster,* 124 F.Supp.2d at 1321 (stating that "[f]orum selection clauses in admiralty cases are presumptively valid and enforceable.").[7] The party attempting to invalidate the forum selection clause carries a heavy burden as the Supreme Court has construed this "unreasonable" exception narrowly and requires the party to make a clear showing of unreasonableness. *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir.1993) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 594–95, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Bremen,* 407 U.S. at 10, 92 S.Ct. 1907). A forum selection clause will be found unreasonable "only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1292 (11th Cir.1998) (citations omitted). Plaintiff has responded to the motions to dismiss arguing that the forum selection clauses are unreasonable under grounds two and three of the test outlined above. The Court finds these arguments to be unpersuasive and will uphold the forum selection clauses.

## III. Analysis

There are three mandatory forum selection clauses at issue in this case. In regard to Global HK and Global, paragraph 21 of the bill of lading states "[a]ny claim or dispute arising under or in connection with this bill of lading shall be determined by the court in Hong Kong." (D.E. No. 9, Exh. 1). In regard to CMA–CGM, the front side of the bill of lading states "[a]ll claims and disputes arising under or in connection with this Waybill[8] shall be determined by exclusive competence of the COURTS of MARSEILLE." (D.E. No. 11, Exh. A). In addition, paragraph 30 of the bill of lading states "[a]ll actions . . . evidenced by this Bill of Lading shall be brought before the 'Tribunal de Commerce de Marseille.'" *Id.,* Exh. B.[9] Thus, under these clauses, the claims against Global HK and Global are required to be brought in Hong Kong and the claims against CMA–CGM are required to be brought in France. As stated above, Plaintiff argues that despite the presumption as to their validity, the forum selection clauses are unreasonable because they effectively deprive it of its day in court because of the inconvenience or unfairness of the chosen forums and because of "the fundamental unfairness of the chosen law would deprive" it of a remedy. Plaintiff specifically argues, these clauses are unreasonable because they create "inefficiency, inconvenience and . . . [squander] judicial re-

---

**7.** The Court applies federal law in determining the validity of the forum selection clauses in this admiralty case. *See Carnival Cruise Lines v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (holding that in an admiralty case, "federal law governs the enforceability of the forum selection clause").

**8.** The terms waybill and bill of lading are interchangeable. (D.E. No. 11, Exh. B).

**9.** Plaintiff has complained that Exhibit B is not really a true and correct copy of the reverse side of the bill of lading because it is written in a larger font. Plaintiff states in its response to the motions to dismiss that "[p]resumably Defendant CMA–CGM, S.A. didn't see fit to include a copy of the actual reverse side of their Bill of Lading because it would be barely legible." (D.E. No. 25 at 5). However, Plaintiff has never argued that the clause on the front of the bill of lading was illegible or more importantly that they were not aware of this forum selection clause.

sources." (D.E. No. 25 at 7). Plaintiff also argues that even if this Court were to enforce the forum selection clauses against Defendants Global HK, Global, and CMA–CGM, the case would still proceed in this Court against Defendant Port of Miami. Plaintiff states that the actions of all the Defendants are necessarily "intertwined" and that this is "a matter of relitigating the exact same facts in three different jurisdictions, including two foreign jurisdictions, where all parties would have to be hauled before each court because they are necessary [10] parties." *Id.* at 7–8. Plaintiff also argues that considering the amount of damages it is seeking, if they had to litigate in three different forums it would be effectively denied its day in court because "[t]he expense involved in such an undertaking will far exceed the damages." *Id.* at 8. The Court finds in considering these arguments that Plaintiff has not clearly demonstrated that the forum selection clauses are unreasonable.

■ First, the Court notes that Plaintiff misunderstands the meaning of the third ground under which a clause can be found unreasonable. This ground states that a clause may be found unreasonable if the chosen law deprives the plaintiff of a remedy. This occurs where the nature of the other forum's law which the clause would require to be applied would necessarily preclude recovery for the plaintiff. *See Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92 F.Supp.2d 574, 577 (E.D.La.2000) (stating that "the Court finds that the foreign forum selection clause is unreasonable under the circum-

stances because there is a risk that a Japanese Court will interpret the bills of lading as limiting liability in violation of Section 1303(8) of the ... [Carriage of Good Seas Act]."); *In re Rationis Enterprises, Inc. of Panama*, No. 97–CV–9052–RO, 1999 WL 6364, at *2 (S.D.N.Y.1999) (stating that "[t]he first and third factors are not applicable here because there is no contention either that the forum selection clause was the result of fraud or overreaching or that some aspects of Korean law will deprive plaintiff of a remedy."); *Union Steel America Co. v. M/V Sanko Spruce*, 14 F.Supp.2d 682, 691–92 (D.N.J. 1998) (where Plaintiff argued "that application of the Korean Commercial Code ... will reduce ... [Defendant's] obligations below what [the Carriage of Goods by Sea Act] guarantees."). Plaintiff has not argued that the nature of the law applied by the Hong Kong courts or the French courts precludes it from recovery. Therefore, the Court does not find the forum selection clauses to be unreasonable under the third ground of the test.

■ Plaintiff's other arguments under the second ground, which state a clause may be unreasonable if it would be deprive the plaintiff of its day in court because of the inconvenience or unfairness is also not enough to invalidate the forum selection clauses at issue. Plaintiff's arguments specifically relate to judicial economy, and the inconvenience and financial hardship of having to litigate these claims in several different forums. First, the Court finds Plaintiff's concerns for judicial economy are not relevant to this Court's consider-

---

**10.** Defendants are not "necessary parties" under Federal Rule of Civil Procedure 19 to the claims asserted against the other individual Defendants. *See Nottingham v. General Am. Communications Corp.*, 811 F.2d 873, 880 (5th Cir.1987) ("Rule 19 does not require joinder of persons against whom ... [defendants] have a claim for contribution."); *De-*
*Witt v. Daley*, 336 B.R. 552, 556 (S.D.Fla. 2006) ("The 'complete relief' provision of 19(a) 'does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible.'") (quoting *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D.Ohio 1984)).

ation of a motion to dismiss based on a forum selection clause. *See La Fondiaria Assicurazione v. Ocean World Lines,* No. 02–CIV–40–JSM, 2002 WL 31812679, at *2 (S.D.N.Y. Dec.12, 2002) (stating that "[a]dmittedly, it might be more efficient to dispose of the entire case in one court, but that is not the standard for overcoming a forum selection clause."); *see also Street, Sound Around Electronics, Inc. v. M/V Royal Container,* 30 F.Supp.2d 661, 663 (S.D.N.Y.1999) (stating that "[r]efusing to enforce a forum selection clause on ... [the basis of judicial economy] would undermine whatever measure of certainty such clauses bring to the international shipping transactions in which they are commonly employed").[11]

■ Furthermore, while the Court agrees that Plaintiff may suffer inconvenience and incur extra expenses in having to litigate these claims in different forums, it does not find plaintiff's inconvenience and financial hardship justify invalidating the forum selection clauses. The main thrust of Plaintiff's argument on this point is that having to litigate in three different forums will be expensive and because of the relatively small amount of damages requested such expense will not be justified. Howev-

er, the Eleventh Circuit has stated that "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *P & S Bus. Machs., Inc. v. Canon, USA, Inc.* 331 F.3d 804, 807 (11th Cir.2003). In regard to Plaintiff's alleged claims of inconvenience, Plaintiff has not specifically detailed the inconvenience it will suffer other than the inconvenience of not being able to litigate all claims before one court; however, this concern is not sufficient enough to justify invalidating the clauses. The Supreme Court has stated "where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *M/S Bremen,* 407 U.S. at 16–17, 92 S.Ct. 1907. The Court finds that the possibility that Plaintiff would be forced to litigate in multiple forums was completely foreseeable as Plaintiff entered into agreements with Global HK and Global requiring litigation of any claims in Hong Kong and an agreement with CMA–CGM requiring liti-

---

11. The Court does note that other Courts have indicated that judicial economy is an appropriate consideration. *See Mylan Pharmaceuticals Inc. v. American Safety Razor Company,* 265 F.Supp.2d 635 (N.D.W.V.2002) (finding a forum selection clause to be unreasonable in part because of judicial economy concerns); *U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro,* No. 98–CIV–3099–JGK 2001 WL 300735, at *17 (S.D.N.Y. March 27, 2001) ("It is possible to conceive of situations where there may be a strong public policy overcoming a forum selection clause, based on the interests of fairness, convenience to the parties, and judicial economy when all of the issues were otherwise being litigated before the court."). This Court finds these cases unpersuasive and specifically notes that the situation in *Mylan* where one of the reasons

for finding the forum selection clause unreasonable was the concern for judicial economy was more extreme. In addition, in *Mylan* 28 U.S.C. § 1404 was controlling and there was no controlling presumption that the forum selection clauses were valid and enforceable as in this case. *See Lipcon,* 148 F.3d at 1290 n. 3 (stating that "the federal statutory provisions governing transfer of venue from one United States District Court to another, *see* 28 U.S.C. § 1404(a) .... do not apply in cases that involve forum-selection clause that requires litigation in another *country.*") (emphasis in original). *See also Stewart v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (holding that section 1404(a) "controls respondent's request to give effect to the parties' contractual choice of venue and transfer.").

gation of any claims in France.[12] In short, because Plaintiff entered into two agreements with different forums selected, the possibility that it would have to litigate claims relating to its shipment in different forums was certainly a foreseeable outcome for Plaintiff. *See Glyphics Media, Inc. v. M.V. "CONTI SINGAPORE,"* No. 02–CIV–4398–NRB, 2003 WL 1484145, at *5 (S.D.N.Y. March 21, 2003) (stating that "[i]n the instant case, the possibility that OWL would be forced to litigate against the plaintiffs in New York and against the third-party defendants in India was completely foreseeable to OWL when it entered into a contract with the plaintiffs containing a New York forum selection clause and then entered into a contract with the third-party defendants containing an Indian forum selection clause.") Thus, the Court is not persuaded by the alleged "unfairness" or "inconvenience" of enforcing these clauses. Finally, the Court also echoes the concern of the court in *Union Steel* and agrees that if it were to adopt the view that "the specter of multi-fora litigation" automatically makes a forum selection clause unreasonable it would be allowing "plaintiffs to escape enforcement of forum selection clauses simply by adding defendants and claims." *Union Steel,* 14 F.Supp.2d at 696. Thus, for the reasons discussed above, the Court finds Plaintiff has not carried its heavy burden and has not made a clear showing that the forum selection clauses are unreasonable and should be set aside. Therefore, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant Global Alliance Logistics, (HK) Limited's Motion to Dismiss (D.E. No. 9), filed on *December 19, 2005* is **GRANTED**. Defendant Global HK is dis-

missed from this case without prejudice to Plaintiff filing an action in the appropriate jurisdiction.

2. Defendant CMA CGM, S.A.'s Motion to Dismiss for Improper Venue, Enforcing Forum Selection Clause (D.E. No. 11), filed on *January 3, 2006* is **GRANTED**. Defendant CMA–CGM is dismissed from this case without prejudice to Plaintiff filing an action in the appropriate jurisdiction.

3. Defendant Global Alliance Logistics, Inc.'s Motion to Dismiss (D.E. No. 14), filed on *January 11, 2006* is **GRANTED**. Defendant Global is dismissed from this case without prejudice to Plaintiff filing an action in the appropriate jurisdiction.

---

**12.** Plaintiff has never argued that these agreements were the result of fraud or over-reaching.